UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA H.[1] ,

    **Plaintiff,**

v.                                          Civil Action 2:22-cv-4461
                                                    Judge Edmund A. Sargus, Jr.
                                                    Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL**
**SECURITY,** *et al.*,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Angela H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 14); the Commissioner's Memorandum in Opposition (ECF No. 15); Plaintiff's Reply Memorandum (ECF No. 16); and the administrative record (ECF No. 9.) For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner of Social Security's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I. BACKGROUND

Plaintiff protectively filed her application for Title XVI Supplemental Security Income Benefits on July 6, 2020, alleging that she became disabled beginning November 1, 2013. Plaintiff's application was denied at the initial and reconsideration levels. An administrative law judge ("ALJ") held a telephone hearing on December 3, 2021. Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. The ALJ issued an unfavorable determination on January 11, 2022, and that decision became final on October 21, 2022, when the Appeals Council declined review.

Plaintiff seeks judicial review of that final determination. In her Statement of Errors (ECF No. 14), Plaintiff asserts a single contention of error: the ALJ erred when assessing a purported medical opinion that Plaintiff needed an emotional support animal, resulting in an inaccurate determination of her residual functional capacity. The undersigned concludes that Plaintiff's claim lacks merit.

## II. THE ALJ's DECISION

The ALJ issued his decision on January 11, 2022, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 60–80.) At the outset, the ALJ explained that there was a prior unfavorable ALJ decision, dated December 26, 2018, that had not been appealed, (*id.* at 60), and that "prior findings and determinations are controlling in subsequent, unadjudicated periods, unless there is new and material evidence or a showing of "changed circumstances." (*Id.*) (quoting *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).)

At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 6, 2020, the application date. (*Id*. at 62.) At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease with cervical radiculopathy; degenerative joint disease of the knees; arthritis; fibromyalgia; asthma; diabetes II with neuropathy and microalbumin; coronary artery disease; obesity; hypoventilation syndrome; hypoxemia; dysthymic disorder; generalized anxiety disorder; and post-traumatic stress disorder. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 63.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> After careful consideration of the entire record, I find that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 4 416.967(b) except she can stand and/or walk for four hours in an eight-hour workday; can sit for six hours in an eight-hour workday; the ability to push or pull is limited as per the exertional weight limits; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead; can have occasional exposure to extreme heat, extreme cold, and irritants such as fumes, odors, dust, and gases; and cannot use hazardous machinery or be exposed to unprotected heights. Mentally, [Plaintiff] can perform goal-based production/work measured by end result, not pace work; work in a low stress job defined as only occasional changes in the work setting; and can have occasional interaction with the public, co-workers, and supervisors.

(*Id*. at 66.) In determining Plaintiff's RFC, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause at least some of her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence because they were inconsistent with her actual reports to providers, her objective findings on exam, testing, and imaging, her treatment history, and her activities of daily living. (*Id.* at 67.) The ALJ explained the prior unfavorable ALJ decision in the record and expressly adopted the RFC from that decision, writing:

> There is a prior unfavorable Administrative Law Judge decision in the record. When adjudicating the subsequent disability claim, the adjudicator must adopt such a finding from the final decision by the ALJ or AC on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

(*Id*. at 67.)[4] The ALJ found that since the date of the prior final decision, there was no new and material evidence regarding Plaintiff's physical impairments that warranted "a finding of a change, improvement or a worsening of the claimant's impairments since her prior applications." (*Id.* at 68.) With regard to Plaintiff's mental limitations, the ALJ explained:

> Mentally, while the record now supports a diagnosis of post-traumatic stress disorder, Social Security disability is not diagnosis-driven, and consideration of all [Plaintiff's] mental impairments and related symptomology since the prior Administrative Law Judge decision does not suggest a worsening of her ability to perform work-related mental activities. Evidence in support of [*sic*] was highlighted in the discussion of the paragraph B criteria and the current impairments. [Plaintiff] continues treatment with findings consistent with those noted in the prior Administrative Law Judge decision and without new and material evidence supporting any significant changes. . . .

(*Id*.) At step four, the ALJ relied upon testimony from a vocational expert ("VE") to determine that Plaintiff was unable to perform her past relevant work as she had performed it. (*Id.* at 73–74.) At step five, the ALJ again relied on testimony from the VE to determine that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 74–75.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 6, 2020, through the date of the ALJ's determination. (*Id.* at 75.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)

---

[4] In the absence of new and material evidence or changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ or Appeals Council decision. *See* Social Security Acquiescence Rulings 98-3(6), 98-4(6); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), *modified, Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990).

(cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As previously explained, Plaintiff alleges that the ALJ erred in determining Plaintiff's RFC by incorrectly considering a purported medical opinion that Plaintiff needed an emotional support animal. (Pl.'s Statement of Errors 7–11, ECF No. 14.) Specifically, Plaintiff challenges

6

the ALJ's consideration and evaluation of a letter written by Nicole Muscari, PMH-C.N.P., on May 7, 2021. (R. 6259.) The undersigned finds that this challenge lacks merit.

**A.        Nurse Muscari's letter is not a medical opinion.**

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. § 416.913(a)(1)–(5). A "medical opinion" is as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in several enumerated areas. § 416.913(a)(2). "Medical opinions" concern the "impairment-related limitations and restrictions in" a claimant's ability to perform specific demands of work activities. § 416.913(a)(2)(i). For mental limitations and restrictions, a medical opinion sets forth the claimant's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" § 416.913(a)(2)(i)(B).

On May 7, 2021, Nurse Muscari wrote a letter titled: "MOBH Emotional Support Letter" which states:

> To Whom It May Concern:
>
> [Plaintiff] has been a client at this organization since 12/16/2019[.]
>
> A review of the client[']s chart, makes me familiar with their history and with the functional limitations imposed by their emotional related illness.

7

> My client meets the definition of disability[5] under the Fair Housing Act and the Rehabilitation Act of 1973.
>
> Due to this emotional disability, my client has certain limitations related to social interaction, coping with stress and anxiety.
>
> In order to help alleviate these difficulties, and to fully use and enjoy the dwelling unit you own and/or administer, I have recommended my client to obtain a pet or emotional support animal. The presence of this animal is necessary for the emotional and mental health of my client, because its presence will mitigate the symptoms my client is currently experiencing.

(R. 6259.)

The parties appear to agree that Nurse Muscari was an acceptable medical source ("AMS").[6] Nevertheless, Nurse Muscari's letter is not a medical opinion because it does not discuss what Plaintiff can do despite her symptoms or diagnoses in a *work setting* as the regulations require. *See Phillips v. Comm'r of Soc. Sec.*, No. 5:20-cv-01718, 2021 WL 5603393, at *7 (N.D. Ohio Nov. 30, 2021) ("Dr. Marshall's letters provided only medical history, observations, diagnoses, and that claimant is disabled and unable to work. None of this can be considered a 'medical opinion.' There was no statement about what Claimant could or could not do or whether he had any impairment-related limitations.") (internal citations omitted); *Mercado v. Comm'r of Soc. Sec.*, 1:20-cv-02253, 2021 WL 5496678, at *7 (N.D. Ohio Nov. 4, 2021) ("Dr. Ahmed's letters provided only medical history, diagnoses, and that Claimant may be unable to work. None of this can be considered a 'medical opinion.'"), *report and recommendation adopted*, No. 1:20-cv-2253, 2021 WL 5494888 (N.D. Ohio Nov. 2, 2021).

---

[5] To the extent Nurse Muscari indicated Plaintiff was "disabled," whether Plaintiff is disabled is an issue reserved to the Commissioner, and therefore any medical source's opinion on that issue is not valuable or persuasive, nor does it constitute a "medical opinion." *See* 20 C.F.R. § 416.920b(c)(3) (providing that "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act" because they are "[s]tatements on issues reserved to the Commissioner").

[6] *See* 20 C.F.R. § 416.902(a)(7); Ohio Rev. Code § 4723.01(O)(4).

8

Here, Nurse Muscari's letter fails to describe what Plaintiff is able to do despite her mental-impairment limitations or restrictions. Instead, the letter focuses on broadly describing Plaintiff's symptoms and her ability to enjoy her dwelling, rather than the ability to function in a work setting. (R. 6259.) Nurse Muscari writes that Plaintiff has "certain limitations related to social interaction" (*id.*), but she does not discuss whether those limitations affect Plaintiff in a work setting, such as, by impairing her ability to interact appropriately with the general public or impeding her ability to get along with coworkers and peers. *See* § 416.913(a)(2)(i)(B). Likewise, Nurse Muscari states that Plaintiff has limitations related to "coping with stress and anxiety" (R. 6259), but again, fails to describe the impact of those "limitations" on Plaintiff's ability to perform specific work demands. Nurse Muscari states that she recommended Plaintiff obtain an emotional support animal to "alleviate these difficulties, and to fully use and enjoy the dwelling unit you own and/or administer." (*Id.*) There is no discussion in this letter of how an emotional support animal would help Plaintiff perform the mental demands of work activities, such as "understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 416.913(a)(2)(i)(B). Indeed, the letter makes no mention of work at all and, as the ALJ pointed out, appears to be directed to apartment management. (R. 68.) For these reasons, none of these statements can be considered a "medical opinion" under the social security regulations.

**B.      The ALJ properly considered Nurse Muscari's statements concerning Plaintiff's need for an emotional support animal in determining Plaintiff's RFC.**

Nurse Muscari's statements constitute "other medical evidence," which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history,

9

clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3). Although an ALJ must consider all the evidence in a claimant's file, an ALJ is not required to articulate how he considered other medical evidence. § 416.920c (stating only that the ALJ is required to articulate how he or she considered medical opinions and prior administrative medical findings); *Haupt v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-01517-JJH, 2021 WL 6773092, at *7 (N.D. Ohio Sept. 1, 2021), *report and recommendation adopted,* No. 3:20-CV-1517, 2022 WL 294834 (N.D. Ohio Feb. 1, 2022) (finding no error in an ALJ's failure to explain his consideration of a psychiatrist's letter, which did not constitute a "medical opinion" because "[an] ALJ is not required to explain how he considered medical evidence."). Here, the ALJ clearly considered Nurse Muscari's statements, and although the regulations did not require him to do so, the ALJ explicitly discussed his evaluation of this evidence. (R. 68–69.)

Plaintiff suggests that the ALJ's consideration of Nurse Muscari's recommendation that Plaintiff get an emotional support animal was flawed, because the ALJ suggested that the recommendation "was not legitimate" and that the "ALJ suggested that Ms. Muscari lied." (Pl.'s Statement of Errors 7, ECF No. 14.) According to Plaintiff, the ALJ imagined an elaborate theory to justify rejecting Plaintiff's alleged need for a support animal and accused Nurse Muscari of lying and violating ethical duties. (*Id.*; *see also* Pl.'s Reply 2–3, ECF No. 16.) Plaintiff's suggestion is unfounded. There is no support for this contention in the record.

The ALJ's discussion of Nurse Muscari's letter set forth facts that support his conclusion that the letter was directed to Plaintiff's living situation at the time and not to any workplace limitations Plaintiff might have had and thus was not a "medical opinion" under the regulations. The ALJ detailed Nurse Muscari's treatment notes that describe Plaintiff's mental state and Plaintiff's reported housing situation:

10

> On 1/15/21, [Plaintiff] was cooperative with a euthymic mood but tearful when talking about relationship with mother. She had clear speech, logical thought processes, normal perception, normal thought content, normal cognition, and no deficits in attention, concentration, fund of knowledge, calculation ability, memory, insight or judgment. She identified positive supports in her life and outlets for the stress of her living situation and parent relationship. She mentioned spending time with her daughter, talking on phone with friends, and spending time with her dogs (D20F). [Plaintiff] reported high anxiety due to situational stressors of looking for somewhere to live with her boyfriend at her 2/12/21 appointment. She requested help with housing, vehicle repair, and a food card. [Plaintiff] reported her plan to get a RV from the boyfriend of her boyfriend's mother. She later reports being sick and staying with a couple of her friends after a bad falling out with her mother. Medication changes were to be made but the claimant was not compliant. She did report drastic improvement in her living situation when she moved in with a friend named Rose. She admitted that she was using less medication and she returned to more normal mental status exam findings. She was noted to sound happy like she was smiling while talking and admitted to feeling better, not being tense and feeling comfortable where she lives as of 4/7/21. She was trying to get SSDI. [Plaintiff] had to move again when the maintenance man discovered her animals which were not permitted, but she was soon enjoying staying with her brother (D20F). [Plaintiff] secured a letter for an emotional support animal directed to apartment management from certified nurse practitioner Nicole Muscari on 5/7/21, well after [Plaintiff] had owned her animals and immediately after they were discovered by the maintenance man (D18F), suggesting that the letter was secured to get around the pet restrictions. It was noted that an emotional support animal would allow [Plaintiff] to enjoy the dwelling unit "you own and/or administer." . . ..

(R. 68–69.) As the Commissioner correctly notes, the ALJ's consideration of the circumstances surrounding Nurse Muscari's letter are contextually relevant. (*See* Def.'s Memo. in Opp'n 9–10, ECF No. 15.) This letter was addressed to no one in particular and did not discuss what Plaintiff could do in a work setting despite her mental-impairment limitations, but it did opine that an emotion support animal would allow Plaintiff "to fully use and enjoy the dwelling unit you own and/or administer." (R. 68.) The ALJ's discussion of Nurse Muscari's treatment notes support his declining to credit Nurse Muscari's letter as a medical opinion that Plaintiff required a support animal in an employment context.

The ALJ also determined that the letter, when considered with Plaintiff's treatment notes, was not persuasive to support a change in Plaintiff's mental functioning and explained how he arrived at that determination. He wrote as follows:

> Thus, to the extent this is opinion evidence, it is unpersuasive as far as supporting a change in [Plaintiff]'s mental functioning since the prior Administrative Law Judge decision. . . . The nurse's own notes do not provide new and material evidence of a worsening or change in [Plaintiff]'s mental functioning since the prior Administrative Law Judge decision. . . .

(*Id.* at 68–69.) The ALJ identified inconsistencies between Plaintiff's treatment notes and objective mental status exam findings versus Plaintiff's self-reports of depression, anxiety, panic attacks, and isolating in her room all day. (*Id.* at 65, 68–69.) He further noted that Plaintiff continued treatment with findings consistent with those noted in the prior unfavorable ALJ decision, supporting determination that Plaintiff had no worsening in her mental functioning. (*Id.* at 68.) The ALJ found that Plaintiff continued to have only a moderate limitation in interacting with others, demonstrated by having many friends, including "close friends that take her in when she . . . needs somewhere to stay[,]" having dating relationships, and being socially acceptable with providers. (*Id.* at 65.)

Plaintiff does not challenge these record findings, nor does she argue that Nurse Muscari's notes or letter demonstrate a change in her mental functioning. Instead, Plaintiff points only to portions of Nurse Muscari's notes that she argues demonstrate mental health impairments. (Pl.'s Statement of Errors 8–9, ECF No. 14.) But the Court must uphold the ALJ's determination if it is supported by substantial evidence, even if other record evidence could support a different conclusion. *See Blakley*, 581 F.3d at 406; *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the

12

decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Here, the ALJ's determination that there was no "new and material evidence" or a showing of "changed circumstances" since the prior unfavorable ALJ decision is supported by substantial evidence. Therefore, the ALJ did not err by concluding that that prior unfavorable determination was controlling in this case when determining Plaintiff's RFC. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

Finally, in a cursory fashion, Plaintiff suggests that her emotional support dog was "medically necessary." (Pl.'s Statement of Errors 11, ECF No. 14.) Specifically, Plaintiff states that Nurse Muscari provided a "clear recommendation that [Plaintiff] obtain a pet or emotional support animal[]" that established the need for an emotional support animal as well as the circumstances for which the animal was needed. (*Id.*) Thus, according to Plaintiff, her emotional support animal is medically necessary, and the ALJ's exclusion of the same resulted in an inaccurate RFC. The undersigned disagrees.

First, it is not clear whether this assertion—contained in a single, short paragraph immediately before the Conclusion in Plaintiff's Statement of Errors—is a separate contention of error or only intended to restate Plaintiff's argument that the ALJ's consideration and evaluation of Nurse Muscari's letter was flawed. Second, in support of this assertion, Plaintiff sole citation is to SSR 96-9p, which does not apply to Plaintiff's case. Plaintiff's RFC, as determined by the ALJ, was for *light work* with some additional limitations. In contrast, SSR 96-9p concerns the Social Security Administration's policies relating to cases where there is an RFC for less than a full range of *sedentary work*. *See* SSR 96-9p. Lastly, Plaintiff does not cite to any authority establishing a standard for incorporating a claimant's need for an emotional support animal into

13

an RFC assessment. However, courts within the Sixth Circuit and elsewhere have examined whether emotional support animals and service animals are "medically necessary" under similar circumstances and have found that they are not. *See Ashley D. v. Comm'r of Soc. Sec.*, No. CV 22-11344, 2023 WL 5266849, at *10 (E.D. Mich. July 17, 2023), *report and recommendation adopted*, No. CV 22-11344, 2023 WL 5251849 (E.D. Mich. Aug. 15, 2023) (medical need for an emotional support dog could not be established by a vague recommendation from a physician stating he felt the plaintiff would benefit from an emotional support animal and that one could help with her symptoms); *Horne v. Saul*, No. 2:19-CV-013-DCP, 2020 WL 1547068, at *12 (E.D. Tenn. Mar. 31, 2020) (Plaintiff did not establish medical necessity for service animal, in part, because "[t]he referenced letter to Plaintiff's apartment complex that he requires a service animal does not detail that such an animal was medically prescribed or provide an opinion on the impact of a service animal on Plaintiff's ability to work."). As explained above, Nurse Muscari's statements do not explain the impact that an emotional support animal would have on Plaintiff's ability to work. *See Ashley D.*, 2023 WL 5266849, at *10. Thus, the undersigned finds no error in the ALJ's exclusion of an emotional support animal in the RFC.

In short, the undersigned finds substantial evidence in the record to support the ALJ's RFC determination, finds that the ALJ considered all of the evidence in the record when determining Plaintiff's RFC, and finds no legal error committed by the ALJ that would require remand.

## V.     RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific Errors. (ECF No. 14.)

14

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE